UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Lahborn Allah, #276542, | C/A No. 4:08-1538-TLW-TER |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| Stan Burt; S. C. Department of Corrections; and Major Martell, | |
| Defendants. | |

The plaintiff, Lahborn Allah, filed this action on April 11, 2008, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. The plaintiff is an inmate currently housed at the McCormick Correctional Institution. Before the undersigned is the defendants' motion for summary judgment. (Document # 43.)[1]

## I. PROCEDURAL BACKGROUND

On August 4, 2008, defendants filed a motion to dismiss. The undersigned issued a report and recommendation on January 21, 2009, recommending that the motion to dismiss be denied and that the parties be granted additional time to file a motion for summary judgment. The report and recommendation was adopted by the District Judge on February 13, 2009. An amended scheduling order was entered on June 3, 2009, giving the parties until July 3, 2009, to file dispositive motions. On June 30, 2009, the defendants filed a motion for summary judgment. (Doc. #43). The

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

undersigned issued an order filed July 1, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On July 22, 2009, plaintiff filed a document entitled "affidavit." (Doc. #48).

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

Plaintiff alleges as follows in his complaint, quoted verbatim, in full:

> Co's Mayers & Wilson came & got me & my roommate on 8-24-07-put us in holdin cell-for 5 days-my roommate went back-they kept me in the Holdin cell for another day- then placed me on lockdown (SMU) I stayed on Lieber lock up until 9/30/08-then I was shipped to B.R.C.I. on a Sunday-I never got any investigation papers or charge papers-never seen a DHO-but my visit has been tooken-phone tooken-account froze & my mail is delayed-when I get it-I've wrote all these people-all they say is that it's a pendin investigation-But I've been on lockDown for 8 months & they want process any of my grievances-
>
> I want to be released to general population & my visit-phone-account back-$500 Dollars a day for every day over the 30 days SCDC policy states they have to handle an investigation-for terrorizin me & my family-all the lies they told my family's the harassment & emotional-psychological damage they have cause me & my family & the cost of court fees
>
> I tried to get a copy of grievance Grc# 1268-07 but the mailroom kept it-I tried to get another copy-but the grievance people wouldn't seen it-so I can only send BRCI 0262-07.

(Amended Complaint, Doc. #16).

2

Plaintiff attached a copy of a Step #I Grievance filed March 6, 2008, No. BRCI-0262-08.[2] Petitioner checked on the complaint form that there was a grievance procedure in the process, that he filed a grievance concerning the claims he raised in this matter, grievance number BRCI 0262-1268-07, that he received a final agency/department/institutional answer or determination on 3-7-08. (See amended complaint, p. 2).

## B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S.

---

[2] A review of his Step One Grievance form reveals that the IGC stated that grievance 1268-07 regarding his classification and visitation issues was returned to him as unprocessed. It also stated that Mrs. Whitaker was contacted regarding these issues and "it was stated that you are aware of a pending investigation from your previous institution." (Doc. #16-1).

317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants have pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and has moved for summary judgment on that basis as well as on the merits of the allegations. Defendants attached a copy of two Step One grievances but argue that plaintiff failed to appeal the grievances. Defendants submitted the affidavit of Valerie Whitaker ("Whitaker"), Program Assistant at Broad River Correctional Institute ("BRCI"), who attests that in accordance with the grievance process and SCDC Policy/Procedure Op-22.12, she reviewed plaintiff's multiple grievances and placement following his arrival at BRCI. (Whitaker affidavit). Whitaker advised plaintiff that his privileges had been restricted because of the concern for safety, security and order at the BRCI. Id. Plaintiff was advised of his right to appeal his grievance through the process outlined on the form if he had a problem with the Warden's decision. Id.

4

In response to the motion for summary judgment, plaintiff filed a document entitled "affidavit" and attached a letter from Ann Hallman, IGA, Inmate Grievance Branch dated March 13, 2008. In this letter, Ms. Hallman states the following:

> You are correct; I misinterpreted the information concerning your grievance BRCI-1268-07. Around November 16, 2007, your Step 1 grievance was returned to you because you did not have a date or signature on the form. You were given until November 21, 2007 to return a properly completed grievance. On December 28, 2007 your grievance was unprocessed because you failed to follow the instructions.
>
> When a grievance is unprocessed the Inmate Grievance Coordinator (IGC) does not have to serve the grievance but mails it to the inmate. You were mailed a copy of this grievance.
>
> There is no cover up and every effort is made to ensure grievances are processed in a timely manner. When a grievance is returned to you for signature and date or for additional information you need to return the properly completed grievance in the time frame given by the IGC.
>
> I trust this answers your concerns.

(Doc. #48-1).

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless

of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though plaintiff claimed he was afraid); *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

Based on the evidence presented, it is recommended that defendants' motion for summary judgment (doc. #21) be granted for failure to exhaust administrative remedies.

### D. ANALYSIS

In the alternative, plaintiff's complaint fails on the merits. Plaintiff has alleged that he was placed in SMU which has resulted in his visitation and phone privileges being taken, his account frozen, and his mail delayed. Plaintiff has not alleged or shown loss of any good time credits or other constitutional injury. Plaintiff has no liberty interest in his placement in the SMU of the prison. There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. See Olim v. Wakinekona, 461 U.S. 238, 244-48, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); and Slezak v. Evatt, 21 F.3d 590 (4th Cir.1994) (stating that the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree

6

of confinement is within the sentence imposed); Ajaj v. United States, 479 F.Supp.2d 501, 543 (D.S.C.2007) (collecting cases holding that prisoners do not have a liberty interest to be housed at a particular institution, to receive a particular security classification, or to avoid administrative segregation). Moreover, the United States Court of Appeals for the Fourth Circuit has held that as long as the "rules of prison management are 'not so unreasonable as to be characterized as vindictive, cruel or inhuman' " and " 'are necessary or reasonable concomitants of imprisonment'," do not involve "punishment or restraints 'intolerable in fundamental fairness,' " and are not exercised in an arbitrary and capricious manner, then no constitutional rights are violated. Breeden v. Jackson, 457 F.2d 578, 580 (4th Cir.1972) (quoting Roberts v. Pegelow, 313 F.2d 548 (4th Cir.1963). Edwards v. Duncan, 355 F.2d 993 (4th Cir.1966), and Carey v. Settle, 351 F.2d 483 (8th Cir.1965)). South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. See, e.g., Keeler v. Pea, 782 F.Supp. 42, 43-44 (D.S.C.1992) (*citing* Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)).

Defendants submitted the affidavit of the Warden at Lieber Correctional Institution, Stan Burtt, who attests that in the interest of safety, security, order and in accordance with 1.1 of SCDC Policy/procedure OP-22.12, Mr. Allah was confined to the Special Management Unit at Lieber Correctional facility. (Doc. #43-4).

Defendants also submitted the affidavit of Major Adrian Martell, Major at Lieber Correctional Institution, who attests that when he began his work at Lieber Correctional Institution, there was a problem on the grounds with contraband, specifically in the form of cellular telephones.

7

(Martell's affidavit, Doc. #43-5). His investigation lead to plaintiff as being involved with the proliferation of contraband in the form of cellular telephones on the grounds of the institution. Id. He followed SCDC Policy/ Procedure OP-22.12 and placed plaintiff in the Special Management Unit on August 29, 2007. Id. While in SMU, all inmates, including plaintiff, are allowed limited access to mail, telephone privileges, restricted canteen purchases and visitation privileges as determined by their status as either a Level 1 or II in accordance with SCDC Policy. Id. Plaintiff received mail in accordance with Policy and telephones calls, canteen privileges, and visitation were restricted in accordance with the Policy and Procedure of Op-22.12 of §23.1, §21.2, and §24.1. (Id. and copy of policy/ procedure attached to affidavit).

It is true that disciplinary hearings which implicate a protected liberty interest demand due process. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In Wolff, the United States Supreme Court held that where a disciplinary hearing affects a liberty interest, inmates must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 563-567. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997). When the punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (holding that disciplinary segregation did not present the type of

atypical, significant deprivation in which a state might create a liberty interest); Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The first step in analyzing a procedural due process claim is whether the alleged deprivation impacts a protected liberty or property interest. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997). In order to show the deprivation of a liberty interest regarding custody classifications, an inmate must show either (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force or (2) the confinement creates an atypical or significant hardship and the state has granted its inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). "[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate are contemplated by his original sentence to prison ..." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir.1991). See also, Brown v. Evatt, 322 S.C. 189, 470 S.E.2d 848 (1996) (holding under South Carolina law, that the state statutes and regulations regarding the classification of prisoners create no liberty interest in a security or custody classification.)

Plaintiff has failed to show that the first prong of the Sandlin test has been met; in other words, he has not shown that his classification change results in an increase in the sentence imposed so as to give rise to the protection of the Due Process Clause by its own force. See, e.g., Beverati, 120 F.3d at 502 (4th Cir.1997) (confinement in administrative segregation does not exceed the sentence imposed in such an extreme way as to give rise to the protection of the Due Process Clause by its own force, and inmates did not possess a liberty interest in avoiding administrative

segregation). As noted above, there has been no allegation or representation made to the court that the plaintiff lost any good-time credits as a result of the disciplinary action.

Under the second prong of the test, this Court must determine whether the state action in changing his classification level imposed on plaintiff an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandlin, 515 U.S. at 484; Beverati, 120 F.3d at 502-503. The plaintiff has failed to show an atypical and significant hardship in relation to the ordinary incidents of prison life. The plaintiff has not alleged that the conditions of administrative segregation were atypical. Rather, the plaintiff alleges that he was denied visitation, phone privileges, and delayed mail which does not state an atypical deprivation. See Beverati, 120 F.3d at 504 (finding that six-month administrative confinement does not constitute a deprivation of that implicates due process). In fact, it is well settled that the placement of inmates into administrative segregation units is a valid means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc." Jackson v. Bostick, 760 F.Supp. 524, 528 (D.Md.1991). Therefore, the court finds that the plaintiff's confinement in SMU does not implicate a liberty interest and no actionable violations of procedural due process occurred

Any attempt plaintiff is making to allege that defendants have abused their authority because they failed to follow SCDC policies is without merit. Allegations that defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the

10

level of a constitutional violation are not actionable under § 1983).

Plaintiff's allegations that he was denied visitation or phone privileges fail because the plaintiff did not lose any good time credits, the only deprivation he suffered was segregation from the general prison population, which is not a constitutionally protected liberty interest. Sandin v. Conner, supra (holding that discipline in segregated confinement does not implicate constitutional liberty interests). Additionally, neither convicted prisoners nor their family members have an inherent constitutional right to visitors because "[a]n inability to receive visitors is not atypical and unusually harsh compared to the ordinary circumstances contemplated by a prison sentence." Africa v. Vaughn, 1996 WL 65445 at *1 (E.D.Pa.1996) (collecting cases). See also Sandin v. Conner, 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Ozolina v. Durant, 1996 WL 82481 at *1 (E.D.Pa.1996) (under Sandin, "there is no right to visitation protected by the Due Process Clause"); cf. Byrd v. Pittman, 1995 WL 434453 (D.D.C., July 1995) (no constitutional right to visitation at Lorton Reformatory [District of Columbia's Prison] because denial of visitation does not concern a protected liberty interest, and revocation of visitation will not affect duration of plaintiff's sentence);

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. The Supreme Court has noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the

maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

The undersigned concludes that the plaintiff has failed to present evidence that defendants violated his constitutional rights. Thus, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the defendants.[3]

### E. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III. CONCLUSION

Based on the above reasoning, it is RECOMMENDED that defendants' motion for summary

---

[3] Additionally, any claim plaintiff is asserting regarding the grievance process fails. Therefore, it is recommended that any claim plaintiff attempts to raise with regard to the grievance procedure be dismissed as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

judgment (document #43) be GRANTED and this claim dismissed.

                                                    Respectfully Submitted,


                                                    s/Thomas E. Rogers, III
                                                    Thomas E. Rogers, III
                                                    United States Magistrate Judge
 December 18, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**